MICHAEL ANNABLE *versus* SAMUEL PATCH *et al.*

Devise of " all the remainder of my estate, both real and personal, to my daughter
S. A. and the children born of her body, including all my wife has the improvement
of during her life after her decease." S. A. had three children when the will was
made, and a fourth was born afterwards, all of whom survived the testator, and two
more were born after his decease, which happened in 1781. *Held*, that S. A. and
her four cnildren living at the time of the testator's death, took an estate together in
fee simple in the real property — in the part in which the widow had a life estate, a
vested remainder *which opened to let in the two afterborn children, and in the*
rest a qualified fee so limited as to admit their claims by way of executory devise;
and that no right by survivorship having accrued before the passing of *St.* 1785,
*c.* 62, § 4, respecting jointenancies, the devisees from that time held as tenants in
common.
It seems also, that the afterborn children were entitled to share in the personal prop-
erty by way of executory devise.

THIS was a *writ of entry.*

Upon a case stated it appeared, that on the 9th of July,
1777, Joseph Whipple, being seised in fee of the demanded
premises, made his last will, which was afterwards approved
and allowed on the 2d of July, 1781.

The testator, after saying, " And as to my worldly estate,
&c., I dispose of it in the following manner," &c., gives to
his wife certain personal estate, and the improvement during
her natural life of certain real estate ; and to his granddaughter
Hannah Whipple twenty pounds ; and then proceeds, " I give
all the remainder of my estate, both real and personal, to my
daughter Sarah Annable and the children born of her body,
including all my wife has the improvement of during her life
after her decease."

In virtue of this devise, Sarah Annable became seised of
the demanded premises and held possession until the 14th
of October, 1822, when she died intestate, having had six
children, namely, Joseph W., Michael, and Daniel, who
were born before the making of the will, Solomon, who was
oorn afterwards, all of whom were living at the decease of
the testator, and Ephraim and Sarah, who were born after
his decease. Michael died in the lifetime of his mother,
under age and without issue. Joseph W., the eldest son,
likewise died in the lifetime of his mother, leaving the de-
mandant, who was his eldest son, and seven other children,

all of whom were born after the decease of the testator, and were living at the decease of their grandmother Sarah Annable.

The tenants claimed under Daniel, Solomon, Ephraim, and Sarah, who upon the death of their mother entered into the demanded premises and conveyed the same to the tenants.

If upon these facts the demandant was entitled to the whole or any part of the demanded premises, judgment was to be entered accordingly ; otherwise he was to become non suit.

*Nov. 2nd.* *Saltonstall* and *Cummins* for the demandant. 1. Sarah Annable took an estate tail. The words, " heirs of her body," are more technical than those used in this case ; but devises are construed liberally in order to effect the intention of the testator. 2 Bl. Com. 114 ; *Wyld's case,* 6 Co. 17 ; *Roe v. Lowe,* 1 H. Bl. 447 ; *Davie v. Stevens,* 1 Doug. 321 ; *Richardson v. Noyes,* 2 Mass. R. 70, note. The words, " children born of her body," mean the same thing as, " to be begotten," and comprehend as well those to be born, as those who are already born, and they are therefore words of limitation and not of purchase ; so that this case is distinguishable from *Wyld's case.* *Doe v. Hallett,* 1 Maule & Selw. 124 ; *Doe v. Perryn,* 3 T. R. 493 ; *Wood v. Baron,* 1 East, 259.

2. If an estate tail did not pass, then Sarah Annable and her three children living at the date of the will, took, according to *Wyld's* case, a jointenancy in fee, which by *St.* 1785, *c.* 62, § 4, was converted into a tenancy in common.

*J. Pickering, contrá.* 1. It appears from the will, that the testator intended to dispose of all his estate. The words " children born of her body," are naturally words of purchase, and do not create an estate tail, unless such an intention is implied by other parts of the instrument ; which is not the case here. Anc. Chart. &c. 85 ; Fearne's Cont. Rem. (6th ed.) 153 : *Shelley's case,* 1 ⌐o. 93 ; *Wyld's case,* 6 Co. 17 ; *Buffar v. Bradford,* 2 Atk. 220 ; *Grover v. Pew,* 4 Dane's Abr. 617 ; *Richardson v. Noyes,* 2 Mass. R 56.

2. Assuming then that Sarah Annable did not take an es- *Annable* tate tail, the defendants contend that she took an estate in fee *v.* simple and in jointenancy with her four children who were *Patch.* living at the decease of the testator in 1781, when the estate vested. 2 Cruise's Dig. 498 ; *Oates* v. *Jackson,* 2 Str. 1172 ; *Doe* v. *Ironmonger,* 3 East, 533. The estate did not open to let in the afterborn children. The case of *Dingley* v. *Dingley,* 5 Mass. R. 535, related to real estate only, whereas this devise comprehends both real and personal ; it may be presumed that the testator knew that the estate in the personal property could not open, and that he intended the real property should go in the same manner as the personal, and that he meant to provide for those grandchildren only whom he knew. The statute of 1785 could not change the jointenancy into a tenancy in common, since the estate had vested before the statute was passed.

WILDE J. delivered the opinion of the Court. It is dif- *November* ficult to ascertain with certainty the meaning of a will so un- *sittings.* skilfully drawn as this is which is now depending. Whether it was the intention of the testator to give an estate tail to Sarah Annable, or an estate in fee simple to her and her children as tenants in common ; and if the latter, whether he intended to provide for all the children, or for those only who were living at the time of making the will, or who might be living at the time of his decease, does not distinctly appear by the language of the will, and must therefore be determined by rules of construction.

The intention of the testator is to be regarded, if clearly **363** expressed, although he may be ignorant of technical language, and may use it improperly ;[1] but *if the intention is left doubt-ful, the will must be construed according to the legal import of the words of the devise.*

These words are, " I give all the remainder of my estate, both real and personal, to my daughter Sarah Annable, and the children born of her body, including all my wife has the improvement of during her life after her decease."

The case must turn upon the construction to be put on

---

[1] See *Ingell* v. *Nooney,* 2 Pick. (2nd ed.) 366 and notes

this clause of the will. The legal import of it is clear. The words " children born of her body," are words of purchase and not words of limitation. It was so decided in the case of *Buffar* v. *Bradford*, 2 Atk. 220. The words in that case were, " to my niece Buffar, and the children born of her body ;" and the court held they were words of purchase, although the niece, at the time of making the will, had no child.[2] Unless therefore it appears from other parts of the will, that it was the intention of the testator to give an estate tail to his daughter, we cannot construe these words as words of limitation. This intention most clearly does not appear ; and there is nothing therefore to control the legal import of the words.

But it has been argued, that if Sarah did not take an estate tail, she and her children took as joint tenants. But the *St.* 1785, *c.* 62, § 4, [see Revised Stat. *c.* 59, § 10,] is decisive on this point. It is no valid objection, that the will took effect before the passing of this act. The statute extends to past grants and devises in express terms, and its operation is not to impair any vested right. It serves rather to render the tenure more beneficial. No estate had vested in any survivor previous to the passing of the act, and therefore from and after that time, Sarah and her children held as tenants in common, whatever might have been the construction of the devise before.

As to the question, whether the children born after the will was made, can come in for their shares, we think that they may. " The children of her body" meant all the children she might have. This will not appear to be a strained construction of the words, when it is observed that as to part of the property the devise was prospective, it being of a remainder after a life estate to the widow. If the devisor had intended to limit his bounty to the children living when he made his will, he would have named them, or used words to show that he meant so to limit it.

[2] *Parkman* v. *Bowdoin*, 1 Sumner, 366 ; *Jones* v. *Davies*, 4 Barn. & Adol. 43 ; *Ray* v. *Enslin*, 2 Mass. R. (Rand's ed ) 563, n. (*a*), and the cases there cited.

We are therefore of opinion, that it was the intention of the testator that all the children should take under the will in equal shares with the mother. This intention may be carried into effect according to the rules of law. As to that part of the will in which a life estate was given to the widow, Sarah and the four children living at the decease of the testator took a vested remainder, which remainder may open to let in the afterborn children, according to the case of *Dingley* v. *Dingley*, 5 Mass. R. 535. As to the residue of the estate, it vested in Sarah and her four children, on the death of the testator. But it was a qualified fee, and so limited as to admit the claims of the afterborn children, and they may hold by way of executory devise. Fearne's Cont. Rem. (6th ed.) 399. There can be no legal objection to such a conditional limitation. It was formerly held in some cases, that an executory devise to a person not *in esse* was void, but it has been long settled that such a devise is good. *Stephens* v. *Stephens*, Cas. Temp. Talb. 228 ; Fearne, 495.

No question as to the personal estate is now before us, but there seems no doubt, that the afterborn children are entitled to their shares by way of executory devise, so that the intent of the testator, if we have rightly interpreted it, may in all respects be fulfilled.

<div align="center">

*Judgment for the demandant.*